UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THEODORE HEINEMANN, | CASE NO. 2:11-CV-00002-MJP |
| Plaintiff, | ORDER ON |
| | 1.   DEFENDANT'S MOTION |
| v. | FOR SUMMARY |
| | JUDGMENT |
| UNITED CONTINENTAL AIRLINES, | 2.  PLAINTIFF'S MOTION TO |
| | STRIKE ARGUMENTS |
| Defendant. | 3.  PLAINTIFF'S MOTION FOR |
| | ATTORNEY APPOINTMENT |

The Court, having received and reviewed:

1.  Defendant United Airlines' Motion for Summary Judgment (Dkt. No. 22)

2.  Plaintiff's Motion to Strike Invalid or Unlawful Arguments and Motion to Dismiss

    Summary Judgment (Dkt. No. 26)

3.  Defendant United Airlines' Opposition to Plaintiff's Motion to Strike (Dkt. No. 30)

    and Reply in Support of Summary Judgment (Dkt. No. 32)

4.  Plaintiff's Response to Summary Judgment (Dkt. No. 33)

5.  Plaintiff's Motion for Jury Consultant and Attorney (Dkt. No. 34)

6.   Defendant United Airlines' Surreply and Motion to Strike (Dkt. No. 35) and all attached declarations and exhibits, makes the following ruling:

IT IS ORDERED that Plaintiff's and Defendant's motions to strike are DENIED.

IT IS FURTHER ORDERED that Plaintiff's motion for the appointment of an attorney and a jury consultant is DENIED.

IT IS FURTHER ORDERED that Defendant's motion for summary judgment is GRANTED and that all Plaintiff's claims are DISMISSED with prejudice.

IT IS FURTHER ORDERED that Defendant shall, within 14 days of the filing of this order, indicate whether it elects to pursue or dismiss its counterclaim.

**Background**

Plaintiff initiated this suit against United Airlines based on an incident which occurred at the conclusion of an international flight (from Amsterdam to Seattle) on which he was a passenger.  As a result of the incident, Plaintiff was arrested when he disembarked from the plane and ultimately became the object of an arrest warrant when he failed to show in court in response to a criminal summons.  His complaint, which alleges claims for "falsifying police reports," false arrest, false imprisonment, "false diagnosis of an epileptic seizure" and "brandishing an ice mallet" (Dkt. No. 1-1), is notable for the absence of an allegation that, as a result of the complained-of actions, he was physically injured in any manner.  The civil lawsuit was originally filed in King County Superior Court, but Defendant removed it to federal court on diversity jurisdiction grounds (28 U.S.C. §§ 1331 and 1332).

**Standard of review**

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates that "there is no genuine dispute as to any

1  material fact and that the movant is entitled to judgment as a matter of law."  FRCP 56(a); *see*

2  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Galen v. County of Los Angeles, 477 F.3d

3  652, 658 (9th Cir. 2007).  The moving party bears the initial burden of showing there is no

4  material factual dispute and that he or she is entitled to prevail as a matter of law.  Celotex, *supra*

5  at 323.  If the moving party meets his or her burden, the non-moving party must go beyond the

6  pleadings and identify specific facts that show a genuine issue for trial.  Cline v. Indus. Maint.

7  Eng'g & Contracting Co., 200 F.3d 1223, 1229 (9th Cir. 2000).  "Bald assertions that genuine

8  issues of material fact exist are insufficient," nor can "a mere scintilla of evidence" withstand

9  summary judgment.  Galen, *supra* at 658.

10  **Discussion**

11  Motions to Strike

12  As will be discussed in detail *infra*, Defendant's motion for summary judgment is

13  premised on two arguments: first, that Plaintiff's claims are pre-empted by the Montreal

14  Convention of 1999 (the international treaty governing passengers and cargo on international

15  flights); and second, that any claims not pre-empted by the Montreal Convention are barred by

16  the Washington Anti-SLAPP statute (RCW 4.24.510).

17  In addition to responding to Defendant's arguments, Plaintiff also moved to strike

18  "invalid or unlawful arguments" from Defendant's defense.  Dkt. No. 26.  Plaintiff first

19  maintains that the "Montreal convention of 1990 has been replace[d] by the Beijing convention

20  of 1999, therefore is no longer law and needs to be stricken from the entire suit record, and be

21  deemed inadmissible by defense in future arguments."  Second, Plaintiff maintains that

22  Defendant's counterclaim based on RCW 4.24.500-510 should be "stricken from any court

23  records" because it is only applicable to "good faith" communications to the authorities.

24

1    Plaintiff maintains that, since he has proven that Defendant's two witnesses (the flight attendants

2    involved in the incident which provoked Plaintiff's arrest) are lying, Defendant should not be

3    permitted to advance this legal theory.

4            Motions to "strike from a pleading any insufficient defense or any redundant, immaterial,

5    impertinent, or scandalous matter" are governed by FRCP 12(f).    These motions are generally

6    disfavored   Neilson v. Union Bank of Calif., N.A., 290 F.Supp.2d 1101, 1152 (C.D.CA 2003).

7            Plaintiff's motion is not well-taken.  Plaintiff presents no citations to legal authority

8    which support his position in either regard.  Defendant, on the other hand, has presented ample

9    authority that the Montreal Convention of 1999 is the legal agreement governing incidents

10   occurring on international flights and thus its citation to the document in its defense can hardly

11   be called "insufficient."  Regarding Defendant's pleading of the Washington Anti-SLAPP statute

12   in its counterclaim, Plaintiff has not demonstrated that it is a "redundant, immaterial,

13   impertinent, or scandalous" argument – all he has demonstrated is that he disagrees with its

14   applicability to the facts of his case.  That is not grounds to strike a portion of a pleading.

15   Plaintiff's motion will be denied.

16           Defendant has moved to strike a second responsive pleading filed by Plaintiff (Dkt. No.

17   33) as untimely and inadmissible.  The Court agrees with Defendant that Plaintiff's second

18   responsive pleading (which was filed after the deadline for his response and after Defendant filed

19   its reply) is untimely and subject to a motion to strike.  As explained *infra*, however, the Court

20   chooses to exercise its discretion and consider the pleading in the interest of permitting Plaintiff

21   to fully air his legal position prior to the Court ruling on its merits.  Defendant's motion to strike

22   will also be denied.

23

24

ORDER ON MOTIONS TO STRIKE &
FOR SUMMARY JUDGMENT - 4

1     <u>Defendant's motion for summary judgment</u>

2        The resolution of Defendant's motion is straightforward.  Even viewing the facts in the

3 light most favorable to Plaintiff, two conclusions are inescapable: (1) this incident falls under the

4 exclusive purview of the Montreal Convention of 1999, which precludes recovery under any

5 state statute; and (2) the undisputed facts of Plaintiff's case do not qualify him for relief under

6 the Montreal Convention.

7        International aviation law has long been governed by international treaties and

8 agreements.  Lee S. Kreindler & Bianca I. Rodriguez, <u>Aviation Accident Law</u> § 10.01 (rev.

9 2007).  From 1934 to 1999, the United States had been a signatory to the Warsaw Convention,

10 which created a single set of legal principles and rules concerning the liability of airlines for

11 claims arising out of incidents occurring during international air travel (which includes both the

12 embarking and disembarking phases of any journey).  In 1999, the Warsaw Convention was

13 superseded by a new international treaty – the Montreal Convention, which entered into force on

14 November 4, 2003.  *See* Convention for the Unification of Certain Rules for International

15 Carriage by Air, May 23, 1999, reprinted in S. Treaty Doc. No. 106-45, 1999 WL 33292734.

16 The United States and the Netherlands are both signatories to the Montreal Convention.  <u>Garrist</u>

17 <u>v. Northwest Airlines, Inc.</u>, 2010 WL 3702374, at *4 (E.D. Mich. Sept. 16, 2010).

18        The Court finds that the flight on which the incident occurred of which Plaintiff

19 complains meets the Montreal Convention definition of "international carriage:" "[A]ny carriage

20 in which… the place of departure and the place of destination, whether or not there be a break in

21 the carriage or a transshipment, are situated… within the territories of two States Parties…"

22 Montreal Convention, Art. 2.

23

24

1  [I]f the places of departure and destination are in two different countries that both
2  adhere to the Convention, the Convention applies to all passage indicated on that
   ticket.  For example, if a passenger has a ticket from San Francisco to New York
   and then connecting to London, the Convention applies, even if the accident
3  occurs on the leg from San Francisco to New York.

4  Aviation Accident Law § 10.04(1)(c).  Thus, the fact that Plaintiff's flight had a stopover in

5  Chicago and that the incident occurred at the conclusion of the Chicago-Seattle leg of the flight

6  does not alter the "international carriage" nature of the flight.

7  The first thing to note about this legal conclusion is the preclusive effect of the Montreal

8  Convention.  The Ninth Circuit has held unequivocally that the Warsaw Convention (the

9  predecessor agreement to the Montreal Convention) pre-empts any independent state law claims

10  arising out of an incident occurring during "international carriage."  Carey v. United Airlines,

11  255 F.3d 1044, 1048 (9th Cir. 2001); see also El Al Israel Airlines, Ltd. v. Tseng, 525 U.S. 155,

12  176 (1999).  The Court has no difficulty in finding that the Montreal Convention, which is

13  identical to the Warsaw Convention in many respects (including the language which is relevant

14  to this case; i.e., Article 17), is entitled to the same preclusive effect as its predecessor.  The

15  Court further finds that any pre-existing legal precedent concerning the Warsaw Convention is

16  equally applicable to identical language in the superseding Montreal Convention.

17  To the extent that Plaintiff is depending on state law to support his claims for "falsifying

18  police reports," false arrest, false imprisonment, "false diagnosis of an epileptic seizure" and

19  "brandishing an ice mallet" (Dkt. No. 1-1), his action cannot be maintained.[1]  Defendant is

20  entitled to summary judgment dismissing all of Plaintiff's state law causes of action.

21

22

23  [1] The Supreme Court has stated that "[t]he cardinal purpose of the [ ] Convention… is to achieve
    uniformity of rules governing claims arising from international air transportation" and under those circumstances the
    Court ruled that it "would be hard put to conclude that the delegates… meant to subject air carriers to the distinct,
24  nonuniform liability rules of the individual signatory nations."  Tseng, 525 U.S. at 169.

1    That leaves the question of whether Plaintiff is entitled to relief under the provisions of

2  the Montreal Convention.  The portion of the treaty which governs his claims is found in Article

3  17:

4         The carrier is liable for damage sustained in case of death or bodily injury of a
          passenger upon condition only that the accident which caused the death or injury
5         took place on board the aircraft or in the course of any of the operations of
          embarking or disembarking.
6
7    Regarding the term "accident": as used in the Montreal Convention, that word does not

8  have its ordinary everyday meaning. The Supreme Court has defined it in this context as

9  including any "unexpected or unusual event or happening that is external to the passenger."  Air

10 France v. Saks, 470 US. 392 (1985).  With deference to the Supreme Court's admonition that this

11 definition "should be flexibly applied" (Tseng, 525 U.S. at 172; quoting Saks, 470 U.S. at 405),

12 this Court finds that the incident complained of by Plaintiff in this lawsuit qualifies as an

13 "accident" within the terms of the Montreal Convention.

14    As the jurisprudence surrounding enforcement of the Warsaw Convention makes

15 abundantly clear,  an international carriage passenger cannot prevail on an "accident" claim

16 without a showing of "bodily injury" (or death, which clearly did not occur here).  A review of

17 Plaintiff's complaint (as well as every pleading he has filed since initiating the complaint)

18 reveals no allegations of bodily injury arising out of any of the behavior he alleges on the part of

19 Defendant's employees.  Not even in response to Defendant's motion (which clearly sets out the

20 airline's position that "no bodily injury = no recovery") did Plaintiff file a declaration indicating

21 that he had suffered any physical harm as a result of the complained-of actions.

22

23

24

1    The Court is thus left with the undisputed fact that Plaintiff suffered no physical injury as

2    a result of this incident.  It is possible, reading between the lines of his complaint,[2] to speculate

3    that Plaintiff is alleging some form of psychological and emotional damage as a result of his

4    alleged ordeal, but the Supreme Court has already held that Article 17 does not permit recovery

5    for mental injury that is unaccompanied by physical injury.  Eastern Airlines, Inc. v. Floyd, 499

6    U.S. 520 (1991).  The weight of authority is clear: absent some proof of bodily injury, Plaintiff

7    cannot recover under the Montreal Convention.  And "recovery for a personal injury suffered on

8    board [an] aircraft [engaged in international air transportation] or in the course of any of the

9    operations of embarking or disembarking, if not allowed under the Convention, is not available

10   at all."  Tseng, 525 U.S. at 162 (internal quotation marks and citation omitted).  Defendant is

11   entitled to its request of summary judgment of dismissal with prejudice of all of Plaintiff's

12   claims.

13        As discussed supra, the Court notes that Plaintiff filed an untimely (8 days after the

14   deadline) response to Defendant's motion.  Dkt. No. 33.  In the interest of allowing Plaintiff

15   (who represents himself *pro se*) his "day in court" to the fullest extent permissible, the Court will

16   address his responsive arguments despite their untimeliness.  Plaintiff asserts several arguments

17   which he claims establish "genuine issues of material fact for trial."

18        He alleges that, contrary to the version of events asserted by Defendant's employees, he

19   had an epileptic seizure just before the plane landed, a seizure which one of the flight attendants

20   mistook as hostility towards her.  He further claims that the reports of both flight attendants

21   concerning  his hostile and threatening manner are falsehoods concocted by them to cover up for

22   _____

23        [2] "Plaintiff has further been damaged by: Severe life change.  Had I had to fight case #CPS013352 in jail
     (originally a felony charge) I might have lost and got 20 years for 2 United Continental Airlines Inc employees for
24   lying…" Complaint, ¶ 4.2.

ORDER ON MOTIONS TO STRIKE &
FOR SUMMARY JUDGMENT - 8

1   their misdiagnosing his medical condition.  He also argues that Defendant is not entitled to the

2   benefits of the Washington Anti-SLAPP statute which forms the basis of its counterclaim

3   because that statute requires that any reports to the authorities be made in "good faith," and since

4   Defendant's employees lied to the police the airline cannot avail itself of the statute.[3]  Id. at p. 1.

5         None of this suffices to escape summary judgment.  Even if everything Plaintiff alleges

6   were true (and the Court ventures no opinion on the truth of his allegations), he would still not be

7   able to overcome the undisputed fact that he is an international air passenger attempting to

8   establish an airline's liability without alleging physical injury as a result of anything that

9   happened to him.  The controlling legal authority (the Montreal Convention) does not permit him

10   to do that.[4]  Under no set of facts that he has propounded is he entitled to maintain this lawsuit.

11         <u>Plaintiff's Motion for Appointment of Counsel and a Jury Consultant</u>

12         In a one-page motion which contains no legal authority aside from a general reference to

13   "the United States Constitution" and a conclusory statement that he "qualifies under federal

14   law," Plaintiff moves the court to provide him with a jury consultant and an attorney.  Dkt. No.

15   34.  In the absence of any legal authority supporting his request, the Court denies Plaintiff's

16   motion.

17

18

19

20

---

21         [3] Defendant also argues alternatively that it is entitled to summary judgment on the basis of the Washington
22   Anti-SLAPP statute, but since prevailing on its counterclaim would require a separate motion brought under the
     provisions of that statutory scheme, the Court declines to rule on that argument.
23         [4] Plaintiff also maintains that "the Montreal Convention of 1990" does not apply to this case, and that the
     controlling document is in fact "the Beijing convention of 1999."  Id. at p. 4.  He cites no authority for this
     proposition and the Court rejects it.  The ruling in this matter is based on the Montreal Convention of 1999,
24   recognized by this Circuit as the sole legal authority over incidents involved international air carriage.

1    **Conclusion**

2         Because this question of liability arising out of international air travel is controlled by the

3    Montreal Convention of 1999, Plaintiff's state law claims are pre-empted and dismissed.

4    Because Plaintiff has not satisfied the requirements of the Montreal Convention by alleging any

5    bodily injury as a result of the complained-of behavior, he cannot recover under that regulatory

6    scheme and Defendant is entitled to summary judgment of dismissal as a matter of law.

7         Defendant's motion for summary judgment is GRANTED, and Plaintiff's lawsuit is

8    DISMISSED with prejudice.  Plaintiff's motion for appointment of an attorney and a jury

9    consultant is DENIED.

10        Defendant must indicate by written submission, within 14 days of the date of this order,

11   whether it will elect to pursue or dismiss its counterclaim against Plaintiff.

12

13        The clerk is ordered to provide copies of this order to Plaintiff and all counsel.

14        Dated May 31, 2011.

15

16

17

     Marsha J. Pechman
18   United States District Judge

19

20

21

22

23

24